Thank you, your honor. I think I'm supposed to do this. I was told. Okay. If you need to, feel free. Good morning. May it please the court, Stephen Robbins for the petitioner in this case, Mr. Juan Manuel Calderon-Torres. I'd like to reserve two minutes for rebuttal. I'd like to get to three points today, time permitting. The first being the denial of relief under the Convention Against Torture. In this case, the immigration judge found that Mr. Calderon cannot qualify for relief under CAT because he, quote, fears general country conditions and crime not particular to him. The BIA took this a step further and said that what he actually fears is not just general country conditions, but cultural adjustment and indiscriminate violence in Mexico. Now, Mr. Calderon was actually asked this question at trial. He was asked, do you think if you didn't have tattoos and didn't have a history of involvement with gangs, you would be targeted or persecuted in Mexico? Now, based on the findings of the immigration judge and the board, we would expect his answer to be, yes, I fear cultural adjustment and general country conditions. But that wasn't his answer. He said, no, it would be different because I live like a normal person. Now, the IJ found Mr. Calderon- Well, in this particular case, I'm referring to, first of all, I don't think that a subjective fear is even the right legal test for relief under the Convention Against Torture. Well, you need torture there. And the board found that what he suffered didn't even rise to the level of torture that he was supposed to suffer.  Well, I disagree that with the board that he wasn't persecuted and with the finding that he- How about torture? Tell me what he suffered that amounts to torture under our cases. Well, I think that under the law, CAT claims must be considered in the aggregate of the risk of torture from all the different potential sources. And so- Well, the fact that he was violating Mexico's criminal law by carrying marijuana and refused to tell the police the source, that can't be a factor because that's not something he's doing based on lawful conduct. So whatever happened, I think resolving from that can't be part of your accumulated package. Well, I think if even if he possessed marijuana and the police asked him where he got it- And he got put in jail because of it. I don't think that being then beaten until he confessed is the justified response on the part of law enforcement. Even if we find that he wasn't tortured, there's plenty of evidence on the record that this does happen in Mexico. And in fact, the immigration judge found that the strategies employed by the Mexican government may not be the most effectual, but they do not suggest the government acquiesces in the torture of its own citizens. And not only do we know that the Mexican government acquiesces to torture, we know that they actively participate in it and they do so with impunity. To get to that conclusion, we don't have to go quote mining through the record. We can actually turn to the judge's own decision, which starts with block quotes from the State Department's human rights country condition reports. And in her own decision, she quotes the State Department saying that significant human rights related problems include police and military involvement and serious abuses, including torture. Arbitrary arrests and detention and confessions coerced through torture remain problems in Mexico. So it's unclear to me how the immigration judge, after citing these passages and in that same report, it says that not only is there torture in Mexico, but torture varies by region. There's different flavors of Mexican torture. Well, there may be generalized problems there. I think the IJ acknowledged that. But what evidence shows that it's more likely than not that he would be tortured? Well, I think that, you know, setting aside his own personal experience. No, I'm asking you to focus on his own personal experience, because that will shed light on the likelihood that he himself would be tortured. Well, Mr. Calderon testified that he was beaten approximately six times by rival gangs. He did try to report it to the police. The police did nothing. That's a form of acquiescence, I believe. He was stopped in the street. Now, there's some disagreement with the immigration judge over who was stopped and why. He said that the federal police were stopping people and asking for IDs. The judge said that Mr. Calderon testified that everyone was being stopped and asked for IDs. That wasn't exactly the testimony. We can't get into the hearts and minds of those police who stopped him. But it's important in Mexico, according to the State Department, there's a travel advisory in the record that states that U.S. citizens traveling in Mexico need to keep a low profile. Well, how is somebody like Mr. Calderon supposed to keep a low profile in a country where there's federal police who arbitrarily arrest people? There's stop points that are operated by non-government actors, including cartels and gangs. Was he arbitrarily arrested? I would argue that he was. Wasn't he in violation of the law? Well, he was at least arbitrarily stopped, asked for an ID and then searched. There was at least some suggestion that everybody was stopped. So it's not that he was singled out because he's a member of the particular social group that he alleges causes his problem. Right. Well, again, I think there's some disagreement and maybe the record's unclear about how many record being unclear isn't enough for you, is it? Don't you have to establish that that the conclusions were not supported by substantial evidence? Yes, I think that what we can also show is that the agency failed to consider any of the evidence. If the judge makes a finding that not only does Mexico not commit torture, they don't even acquiesce to it. There's no evidence of that. That's just simply not supported by the evidence. Well, let me let me let's go back to the subject of what he suffered and give you the easier standard persecution because torture requires a whole lot more. Persecution, you've argued the government decided, I think it's the Hoxha case. I'm sure I'm not pronouncing that in the way that Albanians would recognize. But and so you've sought to distinguish that case, but didn't distinguish the case at all with regard to the issue of whether persecution that what what happened to petitioner there rose to the level of persecution. You distinguish the case on an entirely separate basis. So why isn't the Hoxha case relevant to us and justification for the conclusion that what the petitioner in that case suffered and what your client suffered did not rise to the level of persecution? In that case, what you had was a series of threats that were unfulfilled, a single beating unrelated to those threats. And I think importantly, the petitioner in that case had a similarly situated family member who continued to live in that country. How is that relevant? That's the distinction you offered in your brief. That seems to me entirely irrelevant to the question of whether the harm suffered amounted to torture or amounted to persecution. That's another reason for saying that there was not a well-founded fear. But we're focused here on whether what was suffered amounted to past persecution. I think if you want to look at what amounts to persecution, you've got to look at the the cumulative effects of the harms, whether or not the the the harm was ongoing over a period of time and the extent of the harm. And in that case, you have, again, a single beating and a series of unfulfilled threats. In this case, Mr. Calderon testified that he was constantly fleeing from rival gangs, beat up at least six times, living in hiding, kicked out of his family's home. He didn't have even family to turn to. And some of these harms are lesser harms. They don't on their own arise to the level of persecution. But when considered in their totality, I think that they do. Do you want to save a little bit of time? Yeah, I'll save a little bit of time. Thank you. Good morning, Your Honors. May it please the Court, Timothy Hayes on behalf of the Attorney General. This case involves a former gang member who has been removed from the United States three times, in August 1995, December 1995, and February 2000. After his 2000 removal, he entered the U.S. unlawfully and when caught, expressed a reasonable fear of returning to Mexico. After passing an interview, he sought withholding of removal, contending that he feared harm at the hands of the Mexican police and the Zetas cartel. The agency concluded that petitioner failed to establish that he endured past harm or has a clear probability of facing future harm on the basis of protected ground. And that petitioner has not otherwise shown a clear probability of facing torture in Mexico. Because the record does not compel a contrary conclusion on either finding, the Court should deny the petition. I'm going to focus first on the particular social group, which was, there were a few formulations posited before the agency. Former gang members, persons perceived to be active gang members, and those who have refused recruitment efforts by drug cartels in Mexico. Neither of these groups the agency held recognizable based on the evidence in this record, and for two particular reasons. One was a lack of social distinction. There's little evidence that the groups proposed are considered distinct within Mexican society. The other reason offered was particularity, and that's particularly with former gang members. The group doesn't have discrete boundaries. It could be any, it's really hard to identify who is a former gang member. Well, yeah, but you've had the tattoo element. It's really easy to see who's got that kind of tattoos that have been cited by petitioners as the source of his distress. Yes, but Your Honor, the distinction between former and active gang member in Artiega, the court held was the tattoos were insufficient for particularity purposes. In addition to the social group, the court just discussed it. The assumption that the past harm did not rise to the level of persecution, the agency was correct. This record does not compel that conclusion. I believe it's the Hoxa case. I'm not sure if I'm pronouncing it correctly. It's pretty much on point. The person there suffered extensive facial bruises and two broken ribs. And the worst, even assuming that it was on account of a protected ground in this case, was a broken nose in 1998 by the Zeta cartels. Now, the petitioner, when we discussed that case, distinguished it by noting that Hoxa apparently focused on one episode or one beating. And in this case, he cites multiple beatings over a period of time. You're right, Your Honor. Is that a relevant distinction? No, I think it's a distinction without a difference, Your Honor, because you have to look at everything cumulatively. And cumulatively, that one beating or that one incident, Hoxa, was more severe than all the incidents combined in this particular case. Was Hoxa shot at? No, Your Honor. So petitioner didn't suffer injury as a result of being shot at because the shots missed him. But the potential, even potentially lethal force, would seem to be different than Hoxa. You're right, Your Honor. I think that that could be a distinction. But we don't have enough evidence in the record as to the particularities of the attempted shooting. I mean, and I'm not making light of it. If someone does shoot in your direction, that's a very serious incident. But there's also scare tactics used where someone might shoot a weapon, but it's not directed to actually harm you. It's directed to scare you. So there are some distinctions that can be made. And I don't think on this record that the agency was incorrect in saying that it didn't rise to the level. Turning to the protection against, or protection under the Convention Against Torture Application, there are two main points that the agency made in this case. And they both have been touched on by my colleague. The first was that there was no indication of past torture. And now, past torture isn't required to win a cat claim. But this Court has said it's one of the most significant factors in determining whether there is a clear probability of facing future torture. And none of the incidents that Mr. Calderon faced rose to the level of torture. I understand that he said in his testimony that the police beat him on the sidewalk before they arrested him for the marijuana incident. But those beatings weren't severe enough where he even said he needed medical attention. The testimony about what happened in the actual incarceration, my understanding of that testimony is it wasn't the guards doing anything. It was other gang members sort of trying to prey on him. And he said that he endured some beatings in prison when he was detained for three weeks. But even that is a little bit suspect because at page one or two of the record, he said that he could have reported the beatings to the guards and they might have done something to prevent it. He was afraid to do so because he feared that the consequences from the guards would be worse than the beatings that he endured at the hands of the rival gang members. But he did acknowledge that they might have done something. So there is evidence that not every single individual or government personnel in Mexico is corrupt or unwilling to prevent torture. The other thing I would like to note for the court is in his declaration at page 280, back in the 90s before he was deported the second time, he was in immigration detention at Eloy Detention Center in Arizona. And he claimed that former gang members beat him in detention there as well. I don't know if that's true or not, but it's also in the record. The other issue with Convention Against Torture was acquiescence. And I think this was the crux of the agency's decision, that he cannot show acquiescence based on generalized country conditions. And they cite the Delgado-Ortiz case for that proposition. Now, of course, I think everyone recognizes that there are corrupt officials and protection under the Convention Against Torture applicants have succeeded in certain Mexico cases where they have been able to point to an individualized risk of torture and a clear probability that a Mexican government official would acquiesce to that torture. But Mr. Calderon does not have that in this record. His personal belief is insufficient evidence. And the documentary evidence of generalized corruption is insufficient. And unless the panel has any further questions for me. Thank you. Thank you very much. Just briefly, I wanted to mention before that, in this case, there actually wasn't a finding of lack of particularity. The board says in their decision that they agree with the judge that there's a lack of particularity and social distinction. But if you look at the immigration judge's decision, she rests the whole of her denial of withholding on the lack of social distinction and makes no actual finding as to particularity. And so I don't think that the board can infer or can incorporate a finding that doesn't exist. Now, we still have the issue of social distinction. And if we don't overcome that, then the point is moot. But the respondent, two things about what the respondent said. First of all, Mr. Calderon was found to be a credible witness. And reasonable inferences from factual testimony are allowed. He said he was shot at. It's not the respondent's position now to say that maybe he was just being scared or they were shooting into the air. That's beyond the scope of the record. And the respondent also said that everyone recognizes there are corrupt officials in Mexico. But again, that's not what's recognized. The judge didn't even recognize that basic fact. And so I think that this case has to be reversed or remanded because the record was not fully considered. And when the judge says that, well, their methods are ineffectual, but they're not acquiescing to torture, that's totally the opposite of what the record suggests. All right. Thank you very much, counsel, for your argument. Both sides. Matter submitted for decision.
judges: Fernandez, Clifton, Nguyen